We have four arguments on the calendar this morning, and the first one is number 168. 161839 in Re Honeywell International. Mr. Molitores, please. Thank you, Your Honor. May it please the Court, I am Robert Molitores, representing Appellant Honeywell International. Honeywell believes that the Patent Office has violated the law and its own rules when it improperly held an oral hearing, and that the Board also misunderstood and misconstrued claim terms leading to the decision that the prior art teaches what is claimed in the 948 patent. Can I ask you on the oral hearing question? Suppose that the Board should not have had a hearing. Where's the prejudice? The prejudice is the oral hearing really centered around the meaning of the word inform. And the third party requester talked about this is the crux of the case, and actually had an example of informing can be inferential. And in fact used the example of if I came in from out of the rain, I could tell you it was raining outside, and you would know that. Or if I came in and I had an umbrella and it was wet, I could also infer that. And that's fine. But I'd like to hypothesize, does that tell you that there was a thunderstorm that day? I don't know if it was lightning. In the same kind of way, one of the... Let me maybe ask the question this way. If there had been no oral hearing or oral argument, and the Board had said in its opinion exactly what it did say, would you have had some procedural unfairness objection? We never heard of this claim construction before or something. And it seems to me either you would or you wouldn't, but it wouldn't be in any way dependent on whether there had been people standing up at lecterns talking to the Board face-to-face. Good point. I believe that while we don't know what all the judges were thinking that day, you've got to assume that the argument put forth in terms of that claim construction during the argument did have something to do with their decision. And in that manner, yes, I believe there was harm. There was indeed a different outcome. But they had sought that claim construction before the hearing, right? I mean, before the time of the hearing, you knew that that was the position that they were going to take with respect to construction of form. From the Board's standpoint? Not the Board. Okay, excuse me. From the other side. Yes, absolutely. I agree. Because they took that position, I think it's a very superficial kind of position. Because if you look at Claim 7 that the Board talked about a lot, it regards to an over-controlling set point. Which says that I have a temperature, and let's say it's 66 degrees, and I set the thermostat to be 69 degrees, and so I want it to get warmer faster, so I'm going to go and set it up to 75. And what the Patent Office and Third Party Requester were trying to say as well, if the time on the display does not change, that that infers the outcome, I won't get hotter any faster. And that's wrong. Now, the Board had an alternative ground for obviousness as well, didn't it? It said that because the prior art recognized the same problem, one of Ordinary Scaling Art would have been motivated to inform even under the way you have construed inform. Is that right? Not totally. What that construction said is that, again, the prior art talks about time to temperature. And that's what Nippon Denso talks about. It's a time to temperature. How long will it take to get there? And, again, I think we've got to go a little further that says I have to, in my claim, I am not informing the user just about any time to temperature, but I'm informing the user that if I do an over-controlling set point, I definitely will not change how fast I'll get there. And I guess my point is that, as an example, let me do an example that might clarify this. If I have a heat pump at home, which we probably do, and, again, I do this over-controlling set point and I want it to get faster or hotter, what the Board is saying is that, again, I won't get there any faster if I set it up to a real high temperature. But that's not true. It's not true in all cases. My system at home, if you do that, the heat pump comes on, and then if it's a high enough set point, it actually kicks in the electric heaters in addition to the heat pump. And guess what? I get to that intermediate set point faster. And that's the kind of difference, that you can't just have an infirm that says, one thing, you have to have a message. And that's what all of the claims talk about, is not just informing the user, but informing the user with a message of a specific action. Does any of the prior art that the Board relied on make the point which, at least to a complete layperson in particular, perhaps one standing in front of the, are they still round? They have squares too. The thermostat would not find it self-evident that if I want to get to, what were we trying to get, 69? If you set it at 82, I won't get to 69 any faster. I don't know. Maybe there's a slowdown at the end or something, the way if you want to get to arrive at a certain point, you may want to aim for .3, so you're still going at 60 miles an hour and you get to .2 or something like that. So it doesn't seem to me self-evident to at least this layperson. Is there any art that specifically says this? No. All of the art, again, talks only about this time to temperature component, and that was fairly well known. I have a set point and I will get there in however many minutes, but the example that you've just talked about, no, the art does not go there. The examiner did say, is that right, that it was inherent in a longer time to get to the unduly high, let's say, set point, a longer time to get to the intermediate actual desire one, that it was inherent. And although, and I will say, I think that the page on which the examiner said that is not in the joint appendix. We all experienced some frustration at the thinness of the joint appendix, not finding materials that we wanted to look at, including a complete copy of Nippon Densa, which made it a little bit hard to read Nippon Densa because the figures weren't there. The board quoted the examiner in the right of appeal notice as saying something about inherent. Yes, but it also relied on the fact that the system, one of the quotes was, the system is only an on-off type HVAC system, that I either am cooling or I'm not. Right, but when the examiner said that this no change in amount of time to get to the intermediate desire point, that that's inherent in, I forget which piece of art he was talking about, maybe Nippon Densa. I think it was Nippon Densa. Did you then, and if so, where in the joint appendix, argue to the board that that inherency finding was incorrect and on what factual basis? I will get the exact page number. I don't have that here in front of me, but yes, I agree with you. So, that is correct. Are there particular claims you want to say a word about to highlight? There are a lot of claims and you don't have time to do everything. Correct. Again, I think the prior art, again, talks about this time temperature concept, whereas in claim seven, as we've talked about, there's this informing the user that the third over-controlling point will not decrease the amount of time needed to achieve the second desired set point. We've talked about that. I believe that is a very clear differentiator from all of the art. We also talk about providing the message during an amount of time, talking about a first initial set point over to a second set point. During that amount of time is when we inform the user that is absent in the art, and also talk about a first set point, which is one of a plurality of scheduled set points. So, we're talking about some of the art talks about an ambient temperature, and the board argues that an ambient temperature could be a first set point. It is not. The claim talks about specific starting from a set point and displaying that kind of information along with the message. So, there are a number of points, and as you say, Your Honor, there are a lot of claims here. And you are into your rebuttal time now, so if you want to save the rest, we'll see you in a few minutes. Thank you very much. I'm going to respond first to their oral argument, and I think the first point that I wanted to make is that the board, if we look at A9 of the board's decision, the board specifically says that any arguments not included in the briefs will be refused consideration by the board. So, the board is clearly saying that they did not rely on anything outside of the briefing. So, there is no reason to say that there was something brought up at the hearing that wasn't part of the record. And as was pointed out, the discussion of the hearing was about the claim construction that was already brought forth. The second point I also wanted to make about the oral hearing is that Honeywell received the notice of hearing, and they also received NEST's response to that. So, they should have known that the hearing was going to take place on that date, because they knew that NEST had responded. And then the third point I wanted to make about the oral hearing is that it's not against the board rules to have the parties, you know, to have the third party respond. You know, the 4173D allows a party to respond and say that they want to participate. And actually, the MPEP section that they cite to, 1209, which says that a hearing will be canceled if an appellant waives, is not relevant to inter-parties re-exam. What is the MPEP section that relates to inter-parties re-exam? That section relates to ex-party re-exam. Right. So, it's 2680, oral hearing, and that section, 2680 of the MPEP, does not mention this waiver. It just gives the rule, and it doesn't say anything about that inter-appellant waives. It doesn't have that statement that they relied on in their reading. So, yeah, again, that's MPEP 2680. So, there's no indication at all that the hearing was against the rules. So, they just waived their hearing attendance. Is that right? They didn't cancel the hearing. They just waived their attendance. Right. They just waived their attendance. That's correct. Yeah. Michelle, I've got one question. You said what happened here is Honeywell requests a hearing, then they say, no, we don't want it, we're not going to appear at a hearing. Right. And the other side comes in and says, we want to appear. Correct. At that point, could Honeywell have changed its mind and said, oh, well, since the other side, the requester, is coming in, we want to, or the petitioner is coming in, we want to be heard? Could they have come back and changed their mind? I believe so. I mean, they had already paid the fee and they had already filed the notice requesting. And as long as the hearing was proceeding, I don't I don't see any reason or in the rules or anything why they couldn't then attend the hearing. Can I ask you, I guess, to talk to me about what was indicated in my first question to Mr. Molitorz about prejudice? It seems I'm having a little trouble getting my mind around the idea that a little bit more process would somehow be harmful. And so unless there are some some new, otherwise unnoticed basis for a decision that came out of it, which is not being urged. So all this effort that's gone into parsing the rules and the MPP about whether a hearing had to be held, it seems, I guess, a little hard for me to understand what the point of this all is. I do agree with you. I think it's hard. It's a hard argument to make that due process is being denied to them by another side being heard. I don't think that's a due process violation. I guess, you know, we are just responding to the arguments that they made, but I agree with your point. Can you address Nippon Densa? I guess two things. Sure. I, at least on the basis of my attempt to read Nippon Densa, the portion of it that's in the Joint Appendix, was not seeing that it said what the, I guess, the board says it said at Appendix 13, namely, that it showed these two different set points, one the desired one, the other the overshot, overshooting one, and that it somehow communicated, if only by some kind of static display, that you don't get to the desired one by overshooting it. Right. I agree with you that there's no explicit disclosure about, you know, okay, so for Nippon Densa, you have, you know, you put in the set point, and, you know, Nippon Densa does realize, you know, recognize the same problem. It talks about how, you know, you don't, I mean, your principle, your primary, as your first argument in your green brief on this, it recognizes the problem, and once you recognize the problem, any idiot knows what you do about it, tell people that they're being stupid by thinking it's going to get to their desired point faster. Right. But then you kind of back into what I think is a sentence in your brief that says Nippon Densa's means of informing the user is to display the time that it will take to reach the second actually desired set temperature and allow the user to infer that because this time has not changed, over-controlling to a third set temperature, the overshooting one, does not accelerate system operation. And you cite page 569, which I think is page 54 of DENSO column one. Can you show me where on that column it says what your sentence describing it says it says? I agree. The sentence describing it does require an inference. So I think what happens with Nippon DENSO is you'll put in the new temperature and it will tell you, and the new temperature, because it is an on-off feature, the new temperature will be, you know, above what the old, I mean, sorry, the new time would be above what the old time was prior. So there is this inference that you would make. So you would, you know, know. I don't know if you can. If you can't, that's fine, I think. But where is there anything here about one set temperature and a time and another set temperature and a time? I don't see more than one set temperature and a time. I don't see two of them. And it really could be me. That's what I'm trying to understand. Right. No, I mean, I agree with your reading. Like Nippon DENSO says, you know, it generates the time data and it, you know, calculates the time until the cabin is going to reach that pressure. I mean, that temperature, it, you know, it doesn't, it does, you know, it gives you the new time to temperature when you put in the new temperature. So I think I do agree with your reading. But I think, you know, the board. But the reason, I guess, that felt a little significant is that the big claim construction dispute was about whether the claim language covered the situation where you have a displayed time to get to set point number one. The second set point, I don't know, but the first one you actually put in. And then you put in a second one and that display doesn't change. So it tells you by silence that even though you've now said, I want to actually get to 84 degrees if we're going up and I really, really want to get only to 69 degrees, that it still has a 69 degree time on the display. And that's enough to tell you you haven't changed the time. But I don't see that that has anything to do with what's going on in Nippon DENSO. Well, the time would automatically be larger. So when you put in the 84, it would tell you, let's say, to get to 69, it would say, oh, it's going to take 10 minutes. When you put in 84, it would tell you, oh, now it'll take 22 minutes. So that's where the inference comes in. Then you're inferring, well, okay, it's now going to take much longer. But that doesn't have anything to do with this claim construction dispute, which I thought was about what happens when you simply leave the old time displayed. That tells you that the action you took to overshoot hasn't changed the old time to get to the actually desired. I mean, I think it does, because the claim dispute, the examiner found, well, A, that informing a user doesn't have to require a specific method. And that also, there's a statement that the time not decreasing leads to an inference that the amount of time. So like, I guess if we go to 12, appendix 12, as requester points out, informing a user of an ordinary intelligence that a time to temperature will increase for a third over-controlling set point would also inform the user that the third over-controlling set point will not decrease the amount of time needed to achieve a previous set point. So that's what the board found, and that's where the inference comes in. What's the basis for that? Now I think we're coming either to or near to this examiner statement about inherency. Why should any normal layperson know that that's true? What's the basis for that? I mean, the third party requester did submit a declaration of an expert who made that conclusion. And I think because Nipon-Denso does recognize the same problem, you would say that it would be, that's what they're trying to get at as well. Are you referring to the Pfeffer declaration? Yes. Is there a particular page that we should look at? That's not in the joint appendix. Right. I recognize that. I know the board had pointed to the declaration as well. Okay. Yes, I think the declaration paragraph 32. What page is this? It's not in the appendix. Right, it's not in the appendix. But that paragraph was cited at the top of appendix 4. Right, the board cited it when they found that. And it cites it as being cited by the third party requester's response brief at 4-5. Is that in the joint appendix? It's not. I believe. But I think, I guess this also relates to the board's alternative finding that it would be obvious to have an explicit message once Nipon-Denso recognizes the problem. It would, you know, it is an obvious misrejection. If people don't know something, tell them. Right, yeah. If there are no further questions, I'll yield the rest of my time. Oh, please go. Back to your Honor's question about inherency. I believe we should look at the intervener's brief at page 23 where they talked about once the problem of over-controlling is identified and defined, and it is by Nipon-Denso, it becomes blazingly obvious to solve the problem. The blazingly obvious theorem I'm not quite familiar with, but Nipon-Denso's solution to this is a time to temperature. Back to it is simply a time to temperature, and that is not especially what Claim 7 is talking about, which Your Honor talked about. I'm talking about two different set points. Put aside the originality of the term blazing, at least relatively speaking, in this court. Why isn't it blazingly obvious? Once the prior art says there are a lot of people out there that are over-controlling a simply false assumption, because how would they know, that you don't get to where you want to get to any faster. So why isn't it blazingly obvious? Tell them to stop it. It isn't blazingly obvious because it depends upon the system. And back to my heat pump example. Okay, so where it is false, why isn't it? This is obviously, you don't want to lie to them, so this is for systems that are set up in such a way that you really don't get to where you want to go by overshooting the mark. And you want to tell the users, you may think that you do, but you're wrong. Don't. So tell them. Once you recognize that people are operating under a frequently false assumption, what's not blazingly obvious about the solution? Tell them that the assumption is wrong. Well, in Nippon Denso, instead of saying that message of, you're wrong, you're not going to get there any faster, it simply gives a time. Right, but this is, I mean, this is at least the not terribly featured point of the board, but now featured defense of the board by the director that says, once you recognize the problem, there is just no work left to do in identifying this solution, even if Nippon Denso doesn't identify that solution. If I understand your point correctly, again, recognizing the problem, I think, goes back to, again, what kind of a system you have and, you know, what that solution is. But I indeed see your point. I guess if I can, I'd like to, I only have a minute left, touch upon the 37 CFR 4173B and D. 4173B talks about first requiring that the appellant or respondent request the oral hearing. Yes, that's what Honeywell did. And then we got the notice of hearing, which states that you must, if you're no longer interested in participating in the oral hearing, you must file a waiver. And this allows the panel to promptly act on the appeal without waiting for the oral hearing date, without waiting for the oral hearing date. So that says, like we did when we sent in the waiver and said cancel the oral hearing, that the board can therefore promptly act on the appeal without waiting. What did you think when you received the opposing party's paper saying that they wanted to have a hearing and they submitted the fee and they gave you notice of that paper? Well, that was actually the day after that we canceled. So I assumed it was ships crossing in the night kind of thing, that they just, somebody filed it and that, you know. But what about the fact that you didn't cancel it? I mean, if you look at the box that you checked, it says that you, hearing attendance waived. Correct. It doesn't say hearing canceled. That's the only box. I do not cancel the hearing. That's the only box that is available to select. I understand, but what I mean by that is what I would have understood from that is that I'm waiving my right to be present at a hearing, not that I have the right to cancel it. Particularly when the opposing party then says that we want to have a hearing and pays the required fee. But initially when, within two months after the examiner's answer to request an oral hearing, we requested it, NEST did not. So it wasn't a matter of a cross appeal. And I guess that's where I think MPP 1209 is not exactly on point, but it's analogous in the sense of- Correct. Except the examiner in both cases. The examiner could testify under 1209 ex parte for the patent office. And in much the same way here, since NEST did not do a cross appeal, it tends to be or look like an ex parte in the sense of they wanted to participate in the oral hearing. They didn't request it. And reading that, I guess, any other way doesn't make sense with the notice of hearing that says the panel will promptly act on the appeal without waiting. I wonder about section 37 CFR 41.73D, which specifically says that after the notice is sent, then you can make a request for oral hearing. To participate. But if the hearing has been waived by appellant without a cross appeal, there's nothing to participate in. Thank you very much. Thank you. Thank you. The case is submitted.